**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| JAMIE CORNER, | Case No. |
| *On behalf of herself and those similarly situated*, | |
| Plaintiff, | Judge |
| v. | |
| GREGORY & COMPANY, INC., JAMES GREGORY, JOHN DOE CORPORATION 1-10, and JOHN DOE 1-10, | Jury Demand Endorsed Hereon |
| Defendants. | |

---

**CLASS AND COLLECTIVE ACTION COMPLAINT**

---

1.     Plaintiff Jamie Corner, on behalf of herself and all similarly situated individuals, brings this action against Defendants Gregory & Company, Inc. James Gregory, John Doe Corporation 1-10, and John Doe 1-10 (collectively "Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA") and applicable Pennsylvania law.

2.     Defendants operate or have operated a least 7 Domino's Pizza franchises in Pennsylvania (the "Gregory & Company" stores or restaurants) since on or about 1996.  Stores are located in Lock Haven, DuBois, Clearfield, and Clarion.

3.     Defendants have repeatedly and willfully violated the FLSA by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay

delivery drivers the legally mandated minimum wage wages for all hours worked.  Similarly, Defendants' actions violate Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, and Pennsylvania Wage Payment Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq*.

4.      All delivery drivers at the Gregory & Company stores, including Plaintiff, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for delivery-related expenses.

5.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

6.      Plaintiff also brings this action on behalf of herself and similarly situated current and former delivery drivers in Pennsylvania, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Pennsylvania wage and hour law.

I.      **Jurisdiction and Venue**

7.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Pennsylvania law claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in Pennsylvania and Defendants own and operate the subject stores in this district.

## II.  Parties

### Plaintiff

#### A)  Jamie Corner

10.     Plaintiff resides in the Commonwealth of Pennsylvania at all times relevant. Plaintiff worked for Defendants in DuBois, Pennsylvania beginning in or about October 2018.

11.     At all times relevant, Plaintiff was an "employee" of Defendants as defined in the FLSA and Pennsylvania wage law.

12.     Plaintiff has given written consent to join this action.

### Defendants

#### A)  Gregory & Company

13.     Defendant Gregory & Company is a Pennsylvania corporation headquartered at 12 Cardinal Dr., Lock Haven, Pennsylvania 17745.

14.     Upon information and belief, Defendant James Gregory is the President of Gregory & Co.

15.     Gregory & Company operates or has operated during the relevant time period at least 7 Domino's Pizza stores in the state.  Greg Lightner is the operations manager of all the locations.

16.     Gregory & Company has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

17.     Gregory & Company has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

18.     At all relevant times, Gregory & Company maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring,

firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

19.     Gregory & Company is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Pennsylvania law.

20.     At all relevant times, Gregory & Company has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

21.     Upon information and belief, Gregory & Company gross revenue exceeds $500,000 per year.

**B)     James Gregory**

22.     Defendant James Gregory is the owner and president of the Gregory & Company stores.

23.     Defendant James Gregory is the owner and president of other legal entities that operate the Gregory & Company stores.

24.     Defendant James Gregory is the manager of other legal entities that operate the Gregory & Company stores.

25.     Defendant James Gregory is individually liable to Gregory & Company delivery drivers under the definitions of "employer" set forth in the FLSA and Pennsylvania law because he owns and operates the Gregory & Company stores, serves as a manager and/or member of Gregory & Company, ultimately controls significant aspects of Gregory & Company day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

26.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has had financial control over the operations at each of the Gregory & Company stores.

27.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has a role in significant aspects of the Gregory & Company day to day operations.

28.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has had control over the Gregory & Company stores' pay policies.

29.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has had power over personnel and payroll decisions at the Gregory & Company stores, including but not limited to influence over delivery driver pay.

30.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has had the power to hire, fire, and discipline employees, including delivery drivers at the Gregory & Company stores.

31.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has had the power to stop any illegal pay practices that harmed delivery drivers at the Gregory & Company stores.

32.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has had the power to transfer the assets and liabilities of Gregory & Company.

33.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has had the power to declare bankruptcy on behalf of Gregory & Company.

34.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has had the power to enter into contracts on behalf of each of the Gregory & Company stores.

35.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory has had the power to close, shut down, and/or sell each of the Gregory & Company stores.

36.     At all relevant times, by virtue of his role as owner, president, and/or manager of Gregory & Company, James Gregory had authority over the overall direction of each of Gregory & Company stores and was ultimately responsible for their operations.

37.     Gregory & Company stores function for James Gregory's profit.

38.     James Gregory exerts influence over how the Gregory & Company stores can run more profitably and efficiently.

**C)      John Doe Corporations 1-10**

39.     Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, Defendants own and operate other entities and/or limited liability companies that also qualify as Plaintiff's "employer" under the FLSA and Pennsylvania law.

40.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**D)      John Does 1-10**

41.    Upon information and belief, and in anticipation of likely evidentiary support after a reasonable opportunity for discovery, there are other Defendants who own an interest and/or have operational control over Gregory & Company stores that also qualify as Plaintiff's "employer" under the FLSA.

42.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**III.     Facts**

**Class Wide Factual Allegations**

43.    During all relevant times, Defendants have operated the Gregory & Company stores.

44.    All or some of the Gregory & Company stores employ delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

45.    Plaintiff and the similarly situated persons Plaintiff seek to represent are current and former delivery drivers employed by Defendants at the Gregory & Company stores.

46.    All delivery drivers employed at the Gregory & Company stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

47.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Gregory & Company stores building pizza boxes, making pizzas, cleaning, preparing food items, taking orders, and completing other duties inside the restaurant as necessary.

48.    Defendants' delivery drivers are paid minimum wage or slightly above minimum wage for all hours worked.

49.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

50.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, licensing, registration, and financing costs, and other equipment necessary for delivery drivers to complete their job duties.

51.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, paid licensing, registration, and financing costs, and suffered automobile depreciation all for the primary benefit of Defendants.

52.     At all relevant times, Plaintiff and other similarly situated delivery drivers were reimbursed a per-mile reimbursement rate for each mile they drove that was less than the IRS standard business mileage rate.

53.     Defendants have not maintained records of the actual expenses incurred by their delivery drivers.

54.     Defendants have not reimbursed delivery drivers based on their actual expenses.

55.     Defendants have not reimbursed delivery drivers at the IRS standard business mileage rate.

56.     Defendants have not reimbursed delivery drivers based on a reasonable approximation of the expenses they incurred.

57.     At all relevant times, Defendants have failed to pay Plaintiff and similarly situated delivery drivers the legally required minimum wage because they failed to adequately reimburse them for their automobile expenses.

58.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.     2015: 57.5 cents/mile
b.     2016: 54 cents/mile
c.     2017: 53.5 cents/mile
d.     2018: 54.5 cents/mile
e.     2019: 58 cents/mile

59.     At all relevant times, Defendants apply the same or similar pay policies, practices, and procedures to all delivery drivers at the Gregory & Company stores in Pennsylvania.

60.     All of Defendants' delivery drivers had similar experiences to those of Plaintiff. They received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

61.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and had deductions taken from their wages for the benefit of Defendants, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

62.      Defendants have willfully failed to pay federal and state minimum wage to Plaintiff and similarly situated delivery drivers at the Gregory & Company stores.

**Plaintiff's Individual Factual Allegations**

63.     Defendants harmed Plaintiff in a manner consistent with their policies, patterns, and practices as described herein.

**Jaimie Corner**

64.    Corner works at Defendants' Domino's store in DuBois, Pennsylvania, from October 2018 to the present.

65.    Corner worked over 40 hours per week in one or more workweeks, as shown by Defendants' paystubs for the work she performed.

66.    Corner is an hourly, non-exempt employee of Defendants.

67.    As a delivery driver, Corner delivers pizza and other food items to Defendants' customers' homes and businesses.

68.    When he was not making deliveries, Corner worked inside the restaurant, completing tasks such as taking orders, making pizza, building pizza boxes, taking out trash, sweeping up the food line, mopping and sweeping, and completing other general tasks within the store.

69.    Corner was paid Pennsylvania minimum wage for the hours she worked for Defendants.

70.    Corner regularly made approximately 22 deliveries per day during the hours she works as a delivery driver.

71.    Defendants did not record all of Corner's expenses she incurred while completing deliveries for them.

72.    Defendants did not reimburse Corner at the IRS standard business mileage rate for each mile she drove.

73.    Defendants did not reimburse Corner based on a reasonable approximation of her expenses.

74.     Defendants required Corner to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, registration, licensing, and financing costs, and other equipment necessary for delivery drivers to complete their job duties.

75.     Pursuant to such requirements, Plaintiff purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, registration, licensing, and financing costs, and suffered automobile depreciation all for the primary benefit of Defendants.

76.     Corner was reimbursed twenty-five cents ($0.25) per mile she drove while completing deliveries for Defendants.

77.     Corner regularly drove approximately 4 miles per delivery.

78.     During 2018, for example, the IRS business mileage reimbursement has been $0.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates.

79.     Using that IRS rate as a reasonable approximation of Corner's automobile expenses, every mile driven on the job decreased her net wages by approximately $0.295 ($0.545 - $0.25) per mile. Considering Corner's estimate of about 4 average miles per delivery, Defendants under-reimbursed her about $1.18 per delivery ($0.295 x 4 average miles).

80.     Corner made approximately 22 deliveries per day.

81.     Thus, Corner consistently "kicked back" to Defendants approximately $25.96 per day ($1.18 per delivery x 22 deliveries).  Plaintiff's typical shift lasted 8 hours, and thus she kicked back $3.24 per hour.  Plaintiff's typical work week was five days a week, and thus she kicked back $129.80 per week.

82.     As a result of these unreimbursed automobile expenses Defendants have failed to pay Corner minimum wage as required by law.

**IV.     Collective Actions Allegations**

83.     Plaintiff brings the First and Second Counts on behalf of herself and all similarly situated current and former delivery drivers employed at the Gregory & Company stores owned, operated, and controlled by any of the named Defendants nationwide, including the State of Pennsylvania, during the three years prior to the filing of the original complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

84.     At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

85.     Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay and reimburse Plaintiff and the FLSA Collective.

86.     Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

87.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

88.     The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

89.     The FLSA Collective members are readily identifiable and ascertainable.

90.     For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

91.     In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**V.     Class Action Allegations**

92.     Plaintiff brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All similarly situated current and former persons who work or worked as Delivery Drivers for Defendants Domino's stores in Pennsylvania between the date three years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

93.     Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

94.     The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

95.     The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

96.     There are more than 50 Rule 23 Class members.

97.     Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief that would be sought by each Rule 23 Class member in separate actions.

98.     Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to reimburse for expenses, and failing to pay Plaintiff in a timely manner.

99.     Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the Pennsylvania wage laws.

100.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

101.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

102.    By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of himself and his co-workers.

103.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

104.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

105.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

106.    Upon information and belief, Defendants and other employers throughout the state violate minimum wage laws.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

107.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

108.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

       a.     Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

       b.     Whether Defendants failed to reimburse automobile expenses, as described herein, causing Plaintiff and the Rule 23 Class members' wages to drop below legally allowable minimum wage;

       c.     Whether Defendants recorded and reimbursed the actual expenses of Plaintiff and the Rule 23 Class members;

       d.     Whether Defendants reimbursed Plaintiff and the Rule 23 Class at the IRS standard business mileage rate;

       e.     Whether Defendants paid Plaintiff and the Rule 23 Class all wages due within the timeframe contemplated by Pennsylvania law;

       f.       Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

       g.      The nature and extent of class-wide injury and the measure of damages for those injuries.

109.     In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

**VI.**    **Causes of Action**

## <u>Count 1</u>

### **Failure to Pay Minimum Wages - Fair Labor Standards Act**
### **(On Behalf of Plaintiff and the FLSA Collective)**

110.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

111.     Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

112.     Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses out of pocket, failed to reasonably calculate the value of said expenses, and failed to adequately reimburse Plaintiff and the FLSA Collective for said expenses.

113.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

114.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

115.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## <u>Count 2</u>

**Pennsylvania Minimum Wage Act – Minimum Wage Law Violations**
**(On Behalf of Plaintiff and the Rule 23 Class)**

121.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

122.     Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses without adequate reimbursement.

123.     Defendants are employers of Plaintiff and the Rule 23 Class as the term is defined by the PMWA

124.     By failing to pay Plaintiff and the Rule 23 Class minimum wage for all hours worked, Defendants have violated the PMWA.

125.     As a result of Defendants' failure to pay Plaintiff and the Rule 23 Class the wages they are due, Plaintiff and the Rule 23 Class are entitled to unpaid wages, costs, reasonable attorneys' fees, and interest.

## Count 3

**Pennsylvania Wage Payment Collection Law**
**(On Behalf of Plaintiff and the Rule 23 Class)**

131.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

132.     During all relevant times, Defendants were employers of Plaintiffs and the Rule 23 Class were employees within the meaning of the WPCL.

133.     Pursuant to the WPCL Plaintiff and the members of the Rule 23 Class were entitled to receive all compensation due and owing to them on their regular payday.

134.     As a result of Defendants' unlawful policies, Plaintiff and the members of the Rule 23 Class have been deprived of compensation due and owing.

135.     As a result of Defendants' willful violation of the WPCL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

**WHEREFORE**, Plaintiff Jamie Corner prays for all of the following relief:

A.     Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and his counsel to represent the collective action members.

B.     Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and Pennsylvania law.

F.     An award of unpaid minimum wages, and unreimbursed expenses due under the FLSA and Pennsylvania law.

G.     An award of prejudgment and post-judgment interest.

H.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees; and

I.     Such other legal and equitable relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

Respectfully submitted,

MORGAN & PAUL, PLLC

*/s/ Gregory G. Paul*

Gregory G. Paul (PA ID 83334)
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(412) 259-8375
(888) 822-9421 (facsimile)
gregpaul@morgan-paul.com

Frank Raimond* (NY Bar 4409959)
Raimond & Staines LLC
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (212) 884-9636
frank@raimondstaines.com

Andrew P. Kimble* (OH Bar 0095713)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
akimble@billerkimble.com

*Pro hac admission to be sought*

Counsel for Plaintiff


Dated:  October 17, 2019